UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 3:06-36-KKC

MARCUS CAREY,                                                                                       PLAINTIFF,

v.                                              **OPINION AND ORDER**

STEPHEN D. WOLNITZEK,
*in his Official Capacity*
*as Chairperson of the Kentucky Judicial*
*Conduct Commission, et al.*                                                              DEFENDANTS.

\* \* \* \* \* \* \* \* \*

This matter is before the court on the Defendants' Motions to Dismiss the Amended Complaint (Rec. Nos. 53 and 55). The issue before the court is whether the Plaintiff's challenges to certain state judicial election rules are ripe for judicial review. For the following reasons, the court finds that the Plaintiff's facial challenge to the judicial rule denominated the Commit Clause is ripe for judicial review but that his other challenges should be dismissed.

I.  BACKGROUND.

A.  The Court's October 10, 2006 Opinion and Order (Rec. No. 35)

Carey is an attorney and, at the time he filed his Complaint and Motion for Preliminary Injunction in this matter, was a candidate for the Kentucky Supreme Court. With his Complaint and Motion for Preliminary Injunction, Carey asked the court to declare unconstitutional five canons of the Kentucky Code of Judicial Conduct (the "Code") and a Kentucky statute governing judicial recusal. These provisions have been denominated the Commit Clause,[1] the Recusal Requirements,[2]

---

[1] Canon 5(B)(1)(c) of the Code (the "Commit Clause") provides that:
A judge or candidate for election to judicial office. . .shall not intentionally or recklessly make a statement that a reasonable person would perceive as committing the judge or candidate to rule a certain way on a case, controversy, or issue that is likely to come before the court; and shall not misrepresent any candidate's identity,

the Endorsement Clause,[3] the Solicitation Clause,[4] and the Partisan Activities Clause.[5]

With his initial Complaint, Carey asked the court to declare unconstitutional and prohibit the Defendants from enforcing the allegedly offending provisions of the Code and the recusal requirements of KRS 26A.015(2)(e). (Rec. No. 1, Complaint, Prayer for Relief). Contemporaneously with his Complaint, Carey filed a Motion for Preliminary Injunction (Rec. No. 2). The Defendants[6]

---

qualifications, present position or other facts. Rule 4.300 of the Rules of the Kentucky Supreme Court ("SCR"), Canon 5(B)(1)(c).

[2] KRS 26A.015 provides that "[a]ny justice or judge. . . shall disqualify himself in any proceeding (a) Where he has. . . expressed an opinion concerning the merits of the proceeding" or "(e) Where he has knowledge of any other circumstances in which his impartiality might reasonably be questioned." Likewise Canon 3(E)(1) of the Code provides that judges must recuse themselves when their "impartiality might reasonably be questioned." SCR 4.300, Canon 3(E)(1). Together these are the "Recusal Requirements."

[3] Canon 5(A)(1)(b) of the Code (the "Endorsement Clause") provides that:
A judge or candidate for election to judicial office shall not. . .make speeches for or against a political organization or candidate or publicly endorse or oppose a candidate for public office. . . ."
SCR 4.300, Canon 5(A)(1)(b).

[4] Canon 5(B)(2) of the Code (the "Solicitation Clause") provides that:
 A judge or a candidate for judicial office shall not solicit campaign funds, but may establish committees of responsible persons to secure and manage the expenditure of funds for the campaign  and to obtain public statements of support for the candidacy. SCR 4.300, Canon 5(B)(2).

[5] Canon 5A(2) of the Code (the "Partisan Activities Clause") provides, in pertinent part, that:
A judge or candidate shall not identify himself or herself as a member of a political party in any form of advertising or when speaking to a gathering.  If not initiated by the judge or candidate for such office, and only in answer to a direct question, the judge or candidate may identify himself or herself as a member of a particular political party.  SCR 4.300, Canon 5A(2).

[6] Defendants are members of the Kentucky Judicial Conduct Commission (the "JCC") and Linda Gosnell, in her official capacity as Bar Counsel for the Kentucky Bar Association and members of the Kentucky Inquiry Commission (together the "KBA").
Pursuant to SCR 4.020, the JCC has authority to impose sanctions against any judge or lawyer while a candidate for judicial office who violates the Code and to refer the judge or lawyer to the KBA for possible suspension or disbarment.  The JCC is charged with investigating allegations of judicial misconduct and, where appropriate, with initiating formal proceedings against a judge or judicial candidate.  SCR 4.170.
Pursuant to SCR 3.130(8.2), "a lawyer who is a candidate for judicial office shall comply with the applicable provisions of the Code of Judicial Conduct."  The defendant members of the Kentucky Bar Association Inquiry Commission and the Bar Counsel have certain investigative and disciplinary functions over attorneys admitted to practice in Kentucky, including attorneys seeking judicial office. SCR 3.140 *et seq.*

2

then filed Motions to Dismiss the Complaint. (Rec. Nos. 21 and 22). On October 10, 2006, this court entered an Opinion and Order (Rec. No. 35) which, for the reasons explained below, dismissed Carey's challenges to the Commit Clause, the Endorsement Clause and the Recusal Requirements.

The court denied the Motions to Dismiss Carey's challenges to the Partisan Activities Clause and the Endorsement Clause. The court further determined that Carey had established a likelihood of success on the merits of his challenges to these clauses and granted Carey's Motion for a Preliminary Injunction as to these clauses.

    1)    **The Commit Clause.**

The court dismissed for lack of ripeness and standing Carey's challenge to the Commit Clause because Carey had never identified any particular statement he intended to make that he believed would subject him to sanctions under the Commit Clause. Instead, he had only provided a list of questions (the "Questions") he would pose to himself and other candidates. The court determined that Carey faced no threat of sanctions for simply asking the Questions. The court further determined that there were an infinite number of ways Carey could answer his Questions, some of which may subject him to sanctions under the specific language of the Commit Clause and some of which clearly would not. The court determined that, without knowing the particular statements Carey intended to make in response to the Questions, the court could not find that he faced a credible threat of sanctions given the language of the Commit Clause.

    2)    **The Endorsement Clause.**

The court also dismissed for lack of ripeness and standing Carey's challenge to the Endorsement Clause. The conduct in which Carey proposed to engage was asking public officials to endorse his candidacy. The court determined that the plain language of the clause did not prohibit

this activity and, therefore, Carey could not establish an intent to engage in conducted prohibited by the Clause. Further, the factual record was not sufficiently developed to permit adjudication of this challenge because Carey had not established that the clause actually prohibited him from asking public officials to endorse him.

### 3) The Recusal Requirements.

The court also dismissed Carey's challenge to the Recusal Requirements for lack of standing and ripeness. The court again noted that Carey had not indicated what statements that he intended to make that he feared may cause him to recuse from certain cases if elected. Further, the court noted that the Recusal Requirements pertained only to a judge or justice. Carey was only a judicial candidate. The court also questioned whether recusal is actually a sanction at all that could establish any "injury" sufficient to challenge the Recusal Requirements.

### B. Carey's Amended Complaint.

On November 2, 2006, Carey filed a Motion to Amend his Complaint (Rec. No. 44). In his motion, Carey stated that the Amended Complaint offered additional facts in support of his claims against the Commit Clause and the Recusal Requirements. He did not propose to offer any additional support for his Endorsement Clause challenge or to make any changes to that challenge. The Defendants did not oppose the Motion to Amend and the court granted it. (Rec. No. 49).

In his Amended Complaint, Carey states that he would like to offer responses to the Kentucky Right to Life Association Political Action Committee 2006 General Election Judicial Candidate Questionnaire ("KRL Questionnaire"). (Rec. No. 51, Amended Complaint ¶ 22 and Ex. I). The Questionnaire contains a list of statements and then asks the candidate to mark either "Agree," "Disagree," "Undecided," or "Decline." (Rec. No. 51, Amended Complaint, Ex. I). Carey

4

states he would like to offer "Agree" or "Disagree" responses to the questionnaire. (Rec. No. 51, Amended Complaint ¶ 22). Carey also states that he would like to publicly answer his own Questions. (Rec. No. 51, Amended Complaint ¶¶ 22, 24). In his Amended Complaint, Carey filed under seal his proposed answers to the Questions. (Rec. No. 51, Amended Complaint ¶ 22, Ex. J).

In addition, in the Amended Complaint, Carey reasserted a challenge to the Endorsement Clause but made no significant changes or additions to the Endorsement Clause challenge that was contained in his original Complaint which the court had already dismissed.

The Defendants then filed these Motions to Dismiss (Rec. Nos. 53 & 54) Carey's challenges to the Commit Clause, the Recusal Requirements and the Endorsement Clause contained in the Amended Complaint.

## II. ANALYSIS.

### A. Standard.

"A court lacks jurisdiction over the subject matter if the claim is not yet ripe for judicial review." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). A motion to dismiss claiming lack of ripeness is properly construed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *Bigelow v. Mich. Dept. of Natural Resources*, 970 F.2d 154, 157 (6th Cir. 1992). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Here, the Defendants do not attack the facts underlying Carey's assertion of ripeness. Accordingly, their Motions to Dismiss will be treated as "facial" 12(b)(1) motions.

### B. The Commit Clause.

#### 1) Mootness.

An initial issue raised by the Defendants is whether this case is now moot because the 2006 Supreme Court election in which Carey was a candidate has already occurred and Carey's opponent won. If "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," then the case is moot and the court has no jurisdiction. *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)(quotations and citation omitted). "The mootness inquiry must be made at every stage of a case." *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997).

"An exception to the mootness doctrine exists for wrongs that are 'capable of repetition, yet evading review.'" *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006)(quotations and citation omitted). "This doctrine applies when (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and (2) there is a reasonable expectation or a demonstrated probability that the controversy will recur." *Id*.

In *Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 2352 (June 5, 2006), the plaintiffs challenged a state law requiring independent congressional candidates in a general election to file a nominating petition with a minimum number of signatures the day before the primary election. *Id*. at 369-70. The plaintiffs were Lawrence, an independent congressional candidate, and a voter who wanted to vote for Lawrence. *Id*. at 370. The trial court granted the Defendants' motions to dismiss and the Plaintiffs appealed. *Id*.

On appeal, the Defendants argued that the controversy was moot because the election had already taken place. *Id*. The Sixth Circuit determined that the plaintiffs had "easily met" their burden

6

of establishing the first prong of the "capable of repetition, yet evading review" exception to the mootness doctrine. *Id*. at 371. "Challenges to election laws are one of the quintessential categories of cases which usually fit this prong because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election." *Id*.

In *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006), the Libertarian Party of Ohio challenged state regulations requiring that all political parties nominate their candidates via primary election and that all minor political parties file a petition with the Secretary of State 120 days before the primary. *Id*. at 582. The court first addressed whether the case was moot since the election at issue had already taken place. *Id.* at 583-84. As in *Lawrence*, in determining whether the "capable of repetition, yet evading review" exception to the mootness requirement applied, the Sixth Circuit found "[t]he first prong of this test is easily satisfied. Legal disputes involving election laws almost always take more time to resolve than the election cycle permits." *Id*. at 584. The court explained that the election occurred less than eleven months after the lawsuit was filed and that "future challenges will face the same problem." *Id*.

Here, only approximately five months elapsed between the filing of the lawsuit and the 2006 election. Any future challenge to the Commit Clause will face the same problem. According to the Defendants, an individual cannot become a judicial candidate until November of the year preceding the election. (Rec. No. 53, Mem. Supp. Mot. to Dismiss at 2). Thus, a challenge to the clause cannot be fully litigated before the election occurs. In *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978), the Supreme Court determined that the "capable of repetition, yet evading review" exception applied, finding that 18 months was insufficient time to obtain judicial review. Accordingly, plaintiffs meet the first prong of the "capable of repetition, yet evading review"

exception.

As to the second prong of the exception – whether there is a reasonable expectation or a demonstrated probability that the controversy will recur – the court has been unable to locate in the record any explicit statement by Carey that he intends to run for judicial office again. Carey states that he wants to "announce his views in subsequent elections" (Rec. No. 51, Amended Complaint ¶ 19) and that he wants to "solicit individuals for contributions during his campaign and in subsequent campaigns," (Rec. No. 51, Amended Complaint ¶ 20) but he never states that he intends to be a judicial candidate again. The Sixth Circuit faced a similar situation in *Lawrence*, stating:

> The issue of whether Plaintiffs have established the second prong of the capable of repetition yet evading review exception is more complex because there is no evidence in the record addressing whether Lawrence plans to run for office or Shilo plans to vote for an independent candidate in a future election. The Supreme Court has stated that the purpose of the second prong is to determine "whether the controversy was capable of repetition and not ... whether the claimant had demonstrated that a recurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 319 n. 6, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (emphasis in original). Although Lawrence has not specifically stated that he plans to run in a future election, he is certainly capable of doing so, and under the circumstances it is reasonable to expect that he will do so. Neither is an explicit statement from Shilo necessary in order to reasonably expect that in a future election she will wish to vote for an independent candidate who did not decide to run until after the early filing deadline passed. The law at issue is still valid and applicable to both Lawrence and any independent candidate Shilo might wish to vote for in future election years. Therefore, the controversy is capable of repetition.
> Even if the court could not reasonably expect that the controversy would recur with respect to Lawrence or Shilo, the fact that the controversy almost invariably will recur with respect to some future potential candidate or voter in Ohio is sufficient to meet the second prong because it is somewhat relaxed in election cases. Courts have applied the capable of repetition yet evading review exception to hear challenges to election laws even when the nature of the law made it clear that the plaintiff would not suffer the same harm in the future. *See Rosario v. Rockefeller*, 410 U.S. 752, 756 n. 5, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Honig*, 484 U.S. at 335-36, 108 S.Ct. 592 (Scalia, J., dissenting) (observing that "some of our election law decisions differ from the body of our mootness jurisprudence ... in dispensing with the same-party requirement entirely, focusing instead upon the great likelihood that the issue will

>recur between the defendant and the other members of the public." (internal citations omitted)). Since the harm Plaintiffs allege was the direct result of an extant Ohio statute, future independent congressional candidates will suffer the same harm Plaintiffs are alleging. Consequently, Plaintiffs have established that the harm they suffered is capable of repetition, yet evading review. The district court properly exercised jurisdiction.

*Id.* at 371-72.

Carey is certainly capable of running for judicial office again and it is reasonable to expect that he will do so. Pursuant to *Lawrence*, this is sufficient to show that the controversy is capable of repetition. Furthermore, this controversy almost invariably will recur with respect to some future judicial candidate.

In their Reply brief, the Defendants argue that the "capable of repetition, yet evading review" exception does not apply in this action because Carey has time before the next election to obtain a ruling from the Kentucky Supreme Court as to whether the statements he desires to make during the next judicial campaign would, in fact, constitute violations of the Commit Clause. Whether Carey has time to obtain such state court review, however, is irrelevant to the "capable of repetition, yet evading review" exception. Once a plaintiff establishes that a controversy that has passed is nonetheless capable of repetition and evading review, he is not required to show that the recurrence of the controversy is imminent. The courts placed no such requirement on the plaintiffs in *Lawrence, Libertarian Party of Ohio* or *Bellotti. See also Michigan State Chamber of Commerce v. Austin*, 788 F.2d 1178, 1183 (6th Cir. 1986)(stating that, implicit in *Bellotti*, "was a holding that ripeness does not require the immediacy imposed by the district court").

In *Globe Newspaper Co. v. Superior Court for Norfolk*, 457 U.S. 596 (1982), the plaintiff challenged a trial court's order excluding the press and general public from the courtroom during a rape trial in accordance with the court's interpretation of a Massachusetts statute. *Id*. at 598-99. The

9

order expired with the completion of the trial. *Id*. at 602. The Supreme Court determined that the controversy between the parties was "capable of repetition, yet evading review" because "[i]t can reasonably be assumed that Globe, as the publisher of a newspaper serving the Boston metropolitan area, will *someday* be subjected to another order relying on [the Massachusetts statute's] mandatory closure rule" and because criminal trials are typically short. *Id*. at 603 (emphasis added).

Because this controversy is capable of repetition and of evading review, regardless of when it may repeat, this action is not moot.

**2)     Ripeness.**

Closely related to mootness is ripeness. "Mootness, of course, suggests that the 'live controversy' has passed, while ripeness suggests that such controversy has yet to occur." *Sea-Land Service, Inc. v. International Longshoremen's and Warehousemen's Union*, 939 F.2d 866, 869 (9th Cir. 1991). *See also Western Oil & Gas Ass'n v. Sonoma County*, 905 F.2d 1287, 1290 (9th Cir.1990) ("The ripeness inquiry asks whether there yet is any need for the court to act, while the mootness inquiry asks whether there is anything left for the court to do.") (quotations omitted).

Ripeness "becomes an issue when a case is anchored in future events that may not occur as anticipated at all." *Nat'l Rife Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). To determine whether a claim is ripe, this court must consider 1) the likelihood that the injury alleged by the plaintiff will ever occur; 2) whether the factual record is sufficiently developed to allow for adjudication; and 3) the hardship to the parties from refusing consideration. *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002).

"For pre-enforcement challenges, a case is ordinarily ripe for review 'only if the probability of the future event occurring is substantial and of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment.'" *Id.* (quoting *Magaw*, 132 F.3d at 284). "In a First Amendment pre-enforcement challenge, the inquiry usually focuses on how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute." *Id.* The ripeness requirement is somewhat relaxed in First Amendment cases but there must be a credible fear of enforcement. *Id.*

Carey brings both "as-applied" and facial challenges to the Commit Clause. With his as-applied challenge, Carey argues that the Commit Clause is unconstitutional as applied to him because it prohibits him from publishing his answers to the Questions or to the KRL Questionnaire. Carey also argues that the Commit Clause is facially unconstitutional because it is overbroad and vague.

     **a)**     **Likelihood of Injury.**

Again the current version of the Commit Clause prohibits a judicial candidate from "*intentionally* or *recklessly*" making a statement that "a *reasonable person* would perceive as *committing* the judge or candidate *to rule* a certain way on a case, controversy or issue that is *likely* to come before the court." SCR 4.300, Canon 5(B)(1)(c)(emphasis added).

The KRL Questionnaire asks candidates to indicate their agreement or disagreement with a variety of statements, specifically "[r]ecognizing the judicial obligation to follow binding precedents of higher courts and applicable constitutional and statutory provisions, to honor stare decisis, and to decide any future case based on the law and facts of that case. . . ." For example, the Questionnaire asks candidates to indicate whether they agree or disagree with the following statement:

> Recognizing the judicial obligation to follow binding precedents of higher courts and applicable constitutional and statutory provisions, to honor stare decisis, and to

>decide any future case based on the law and facts of that case . . . I believe that the unborn child is biologically human and alive and that the right to life of human beings should be respected at every stage of their biological development.

Thus, the KRL Questionnaire does not expressly ask judicial candidates to make an *unqualified* commitment to rule a particular way on any issue. It is unclear whether Carey would actually be sanctioned under the Commit Clause if he publishes his proposed answers to the Questionnaire while a judicial candidate.

With regards to Carey's answers to his own Questions, as noted in this court's prior Opinion on this issue, there does not appear to be any likelihood that Carey will be sanctioned for answering some of the Questions including questions asking him to state his judicial philosophy in interpreting the law (Proposed Question 1) and what he believes the "rights of the judiciary" are (Proposed Questions 3 and 4). Carey has provided the court with proposed answers to other Questions such as "when do you believe that human life deserving of the protection of the law begins" and "do you believe that the Kentucky Constitution provides a constitutional right to legally recognized same-sex marriage?" It is unclear whether these proposed answers would be interpreted as "*intentionally* or *recklessly*" making a statement that "a *reasonable person* would perceive as *committing* the judge or candidate *to rule* a certain way on a case, controversy or issue that is likely to come before the court." Thus, this is not a case where the plaintiff has brought a pre-enforcement facial challenge to a statute that expressly prohibits him from engaging in the speech in which he proposes to engage.

Further, there are no decisions or opinions interpreting the clause by the state entities charged with doing so. As the court explained in its prior Opinion and Order, pursuant to SCR 4.310, the Code may be interpreted by an ethics committee of the Kentucky Judiciary (the "Ethics Committee") which can issue informal or formal opinions upon the request of any judge or judicial candidate or

on its own motion. These opinions are advisory only. SCR 4.310. Any person affected by an opinion of the Ethics Committee can seek review of the opinion by the Kentucky Supreme Court. SCR 4.310. As of yet, neither of these entities has issued an opinion interpreting the clause.

Nevertheless, at least with regards to Carey's facial challenge to the clause, in order for this claim to be ripe for review, Carey does not need to establish that it is certain that he would be sanctioned for engaging in his proposed activity. Instead, he need only establish a credible fear of such prosecution. Though it is unclear whether Carey would actually be sanctioned for publishing any of the answers he has supplied to the court, given the language of the Commit Clause and the language of his proposed speech, his fear of sanctions for engaging in some of this speech is certainly genuine and credible. At least for purposes of Carey's facial challenge to the clause, this is sufficient for the ripeness inquiry. "[I]n cases involving fundamental rights, even the remotest threat of prosecution, such as the absence of a promise not to prosecute, has supported a holding of ripeness where the issues in the case were 'predominately legal' and did not require additional factual development." *Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 435 (3rd Cir. 2003).

Generally, where there is a pre-enforcement challenge to a statute, the plaintiff must also establish that the threat of sanctions is "imminent." As explained above, however, the court has determined that this controversy is "capable of repetition, yet evading review." This doctrine recognizes that the threat of sanctions under some laws will not remain imminent for long enough to permit full judicial review of the law's constitutionality. As explained below, the imminency of the next election may be relevant in analyzing the hardship to the parties of refusing judicial review on ripeness grounds. Nonetheless, because this controversy is capable of repetition and of evading review, Carey need not establish that the threat of sanctions under the Commit Clause remains

imminent.

### b) Sufficiency of the Factual Record.

The next issue is whether the factual record is sufficiently developed to allow this court to adjudicate Carey's challenge to the Commit Clause. On this issue, there is a clear distinction between Carey's facial and as-applied challenges. The factual basis of Carey's as-applied challenge to the Commit Clause is lacking because it has yet to be determined whether the clause prohibits him from engaging in the activity in which he proposed to engage. This fact is important. If the Commit Clause does not prohibit Carey from publishing his answers to the Questions or the KRL Questionnaire, then the as-applied challenge is moot. Again, there are no Kentucky Supreme Court opinions or Ethics Committee advisory opinions that would assist the court in understanding how the state will eventually enforce the clause. In order to resolve Carey's as-applied challenge, the court would be forced to guess about how these entities would apply the clause to Carey's proposed actions.

This sort of dispute is not well-suited for judicial review. *See Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 693 (8th Cir. 2003)(holding challenge to state election law unripe where plaintiffs had not sought an advisory opinion from the state ethics committee regarding its interpretation of the law and, thus, plaintiffs could "discover that no real threat of enforcement exists at all" and where the district court had no indication how the state interprets and enforces its own statutes). Delaying review of Carey's as-applied challenge until the relevant state entities have determined the underlying issue of whether his proposed actions violate the Commit Clause will permit a more "efficient and focused" review of the challenge by this court. *See Connor*, 323 F.3d at 694.

In contrast, Carey's facial challenge to the Commit Clause presents a purely legal or constitutional issue. It is irrelevant for this challenge how the clause is ultimately interpreted by the Ethics Committee or the Kentucky Supreme Court. There is no possibility that any ruling by the state entities would moot the facial challenge. The factual record is sufficiently developed to allow for adjudication of this challenge.

      **c)**      **Hardship to the Parties.**

Carey will not be burdened if this court declines to address the as-applied challenge until the state entities charged with interpreting and enforcing the clause have reviewed the clause in relation to Carey's proposed activities. In fact, Carey may learn that his proposed speech, or at least some of it, does not violate the Commit Clause. Further, Carey has not stated that he intends to run for judicial office again. Even if he does, Defendants assert without objection that the next regularly scheduled elections for the Supreme Court seat which Carey sought and for state Court of Appeals and Circuit Court seats will not occur for eight years, and that the next regularly scheduled election in which Carey could be a candidate for a state District Court seat will not occur for almost four years.

Thus, even if Carey should decide to become a judicial candidate again, he has sufficient time before the next judicial campaign to obtain a ruling by the Kentucky Supreme Court on whether the Commit Clause prohibits him from answering the Questions and the KRL Questionnaire. While the Ethics Committee has previously determined that Carey's challenge to the Commit Clause in this court deprived the committee of jurisdiction to issue an advisory opinion as to whether his proposed activity would violate the clause, the court presumes that the Ethics Committee would issue the requested advisory opinion if this court should dismiss the as-applied challenge.

"Where a decision would require extensive factual findings of the sort normally made by an agency in the court of its deliberations, the courts have held the dispute unripe." *General Offshore Corp. v. Farrelly*, 743 F.Supp. 1177, 1187 (D.V.I. 1990)(citing cases). "In contrast, purely legal or constitutional issues are generally fit for adjudication." *Id.* (citing cases).

"By definition, a facial challenge is made in a factual vacuum; the court's job is merely to determine whether the statute, however applied, is constitutional. Consequently, the issues presented in a facial challenge are purely legal, making whatever factual determinations the [state entity] could supply irrelevant." *Id*. at 1188. In contrast, "[g]iven the strong policy of *Ashwander* and its progeny in favor of avoiding constitutional issues. . . it would be inappropriate for this court to hear the as-applied challenge before the [state] has addressed the underlying dispute." *Id*. at 1189. *See also Marchi v. Board of Cooperative Educational Services of Albany*, 173 F.3d 469 (2nd Cir. 1999)(plaintiff's as-applied first amendment challenge to school district directive held not ripe for review but facial challenge considered on merits). *Democratic Nat'l Comm. v. Watada*, 198 F.Supp.2d 1193, 1198-1201 (D. Haw. 2002)(discussing the distinction between facial and as-applied challenges when deciding whether disputes are justiciable).

Balancing these ripeness considerations, the court will dismiss Carey's as-applied challenge to the Commit Clause. It is not well-fitted for judicial review and the parties will not be unduly burdened by delaying resolution of this issue until the relevant state entities determine if Carey's proposed speech is actually prohibited under the clause. Carey's facial challenge to the clause is, however, ripe for judicial review.

### C. The Recusal Requirements.

Carey also charges that the Recusal Requirements are unconstitutional as applied to him

because they prohibit him from publishing his answers to the Questions or the KRL Questionnaire. In its prior opinion, the court found that Carey lacked standing to challenge the requirements and that the challenge was not ripe for judicial review. In reaching this determination, the court considered several factors. First, at that time, Carey had not explained the statements he intended to give that he believed would cause him to have to recuse from certain cases if he were elected justice. The court determined that, without knowing the content of Carey's proposed statements, it was unable to determine whether Carey had a reasonable fear that making the statements would force him to recuse.

Second, the Recusal Requirements apply only to judges and justices. Because Carey was not a judge or a justice, the court determined that he could not established a real threat of sanctions under the Recusal Requirements. Finally, the court questioned whether possible recusal is actually an "injury" for standing purposes.

While Carey has now explained to the court the statements he intends to make that he feels will require him to recuse from cases under the Recusal Requirements, the problem still remains that he is not yet a judge or justice. Carey argues, however, that he is injured by the Recusal Requirements even as a candidate because he is chilled from speaking because he fears he will eventually have to recuse from cases or that he will be subject to discipline if he refuses to recuse from cases.

In order to establish standing and ripeness, Carey must allege something more than a subjective fear of sanctions for answering the Questions. This court must find a credible, objective threat that Carey will be sanctioned for answering the Questions. Where a plaintiff challenges a statute on First Amendment grounds, "[a]llegations of a subjective 'chill' are not an adequate

substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum,* 408 U.S. 1, 13-14 (1972); *Bigelow v. Virginia*, 421 U.S. 809, 815-17 (1975).

Carey's fears of being sanctioned under the Recusal Requirements are speculative. Carey will have to recuse from cases only *if* he is elected judge or justice and *if* certain cases come before him with regards to which his impartiality might reasonably be questioned as a result of the answers he gave to the Questions or Questionnaire.

Further, as expressed in its prior opinion, the court continues to question whether recusal is actually a sanction for engaging in speech or an injury sufficient to establish standing. To the extent that Carey now asserts that his speech is chilled not because he fears having to recuse from cases but because he fears being sanctioned for *refusing* to recuse, this fear involves even more speculation than the fear of recusal. Carey has never even alleged that he intends to refuse to recuse from any cases if he is elected judge or justice.

For all these reasons, Carey has not established an injury-in-fact sufficient to provide him with standing to challenge the requirements and this matter is not ripe for judicial review.

**D.     The Endorsement Clause.**

In his Amended Complaint, Carey charges that Endorsement Clause is on its face unconstitutionally vague and overbroad and is unconstitutional as applied to him because it prohibits him from soliciting endorsements of public officials.

Again, in its prior Opinion and Order, the court dismissed this claim for lack of ripeness and standing, finding that the language of the clause did not prohibit the conduct in which Carey proposed to engage – soliciting public officials to endorse his candidacy. In the Amended Complaint, Carey does not make any new or different allegations regarding the clause. Carey has

made no motion for the court to reconsider its prior Opinion and Order dismissing the Endorsement Clause challenge. Further, with his response to the Motion to Dismiss, Carey has not presented the court with any reason to reconsider its prior ruling. Accordingly, Carey's challenge to the Endorsement Clause remains dismissed.

Carey's challenge to the Endorsement Clause is similar to the challenge the Sixth Circuit reviewed in *Kentucky Press Association v. Commonwealth of Kentucky*, 454 F.3d 505 (6th Cir.2006). Given the language of the Endorsement Clause, there is even more of a likelihood here than in *Kentucky Press Association* that Kentucky courts would interpret the clause to permit the plaintiff to engage in the activity in which he seeks to engage.

With his response to the Defendants' Motions to Dismiss, Carey requests that the court certify to the Kentucky Supreme Court the question of whether certain advisory opinions attached to the Amended Complaint "constitute a proper interpretation of the Endorsement Clause." Carey asserts both facial and as-applied challenges to the Endorsement Clause. Kentucky Rule of Civil Procedure 76.37 authorizes the Kentucky Supreme Court to answer questions of law that "may be determinative of the cause then pending before the originating court. . . ." Whether the advisory opinions properly interpret the Endorsement Clause is not "determinative" of Carey's challenge to the clause. Carey does not only claim that the clause is unconstitutional as applied to his proposed activity of soliciting public officials to endorse him, but also that it is facially unconstitutional. Because certification of the issue of whether the advisory opinions properly interpret the Endorsement Clause would, at best, determine the as-applied challenge, the court declines to certify this issue to the Kentucky Supreme Court.

Finally, the court declines to certify the as-applied question to the Kentucky Supreme Court

because the Kentucky Supreme Court rules provide a mechanism by which Carey can directly obtain a ruling from the state Supreme Court regarding whether his proposed activity is prohibited under the Endorsement Clause.

### III.   CONCLUSION.

For the above reasons, the court hereby ORDERS as follows:

1) the Motions to Dismiss (Rec. Nos.53 and 55)  are GRANTED in part and DENIED in part;

2) The Motions to Dismiss are GRANTED as to Carey's challenge to the Endorsement Clause and the Recusal Requirements and his as-applied challenge to the Commit Clause contained in the Amended Complaint and those claims are DISMISSED without prejudice for lack of subject matter jurisdiction; and

3) The Motions to Dismiss are DENIED with regards to Carey's facial challenge to the Commit Clause.

This 17th day of September, 2007.

Signed By:
*Karen K. Caldwell*   KKC
United States District Judge