UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 3:06-36-KKC

MARCUS CAREY,                                                                                    PLAINTIFF,

v.                                            **OPINION AND ORDER**

STEPHEN D. WOLNITZEK,
*in his Official Capacity
as Chairperson of the Kentucky Judicial
Conduct Commission, et al.*                                                               DEFENDANTS.

* * * * * * * * *

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 136, 137).

**I.      Background**

The Plaintiff, Marcus Carey, is an attorney and, at the time he filed his Complaint, was a candidate for the Kentucky Supreme Court. The Defendants are members of the Kentucky Judicial Conduct Commission (the "JCC") and the Bar Counsel for the Kentucky Bar Association and members of the Kentucky Inquiry Commission (together the "KBA").

With his Complaint, Carey asked the Court to declare unconstitutional five provisions of the Kentucky Code of Judicial Conduct (the "Code") and a Kentucky statute governing judicial recusal. In Kentucky, judges are elected and all judicial candidates are required to abide by the Code which was promulgated by the Kentucky Supreme Court. Carey argued that each of the five provisions and the judicial-recusal statute violated the First Amendment to the United States Constitution which provides that "Congress shall make no law. . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

In prior opinions, the Court dispensed with Carey's challenges to all but one of the provisions. The sole issue remaining before the Court is Carey's facial challenge to the so-called Commit Clause of the Code. That clause has been revised during this litigation. At the time the Complaint was filed, the Commit Clause read as follows:

> A judge or candidate for election to judicial office . . . shall not intentionally or recklessly make a statement that a reasonable person would perceive as committing the judge or candidate to rule a certain way on a case, controversy, or issue that is likely to come before the court.

Rule 4.300 of the Rules of the Kentucky Supreme Court ("SCR"), Canon 5(B)(1)(c). In a prior opinion in this action, the Court determined that the clause was subject to strict scrutiny review and that it was constitutional. (DE 101.)

On appeal, the Sixth Circuit determined that the clause was "constitutional in the main but contains a material ambiguity, which requires further consideration by the district court." *Carey v. Wolnitzek*, 614 F.3d 189, 194 (6th Cir. 2010). The clause was constitutional, the Sixth Circuit determined, insofar as it prohibited a judicial candidate from "intentionally or recklessly mak[ing] a statement that a reasonable person would perceive as committing the judge or candidate to rule a certain way on" a *case* or *controversy* that is likely to come before the court. *Id.* at 207. The problem, however, was the limitation on commitments to rule a certain way on *issues* likely to come before the court. *Id.* at 207-08.

The court questioned what exactly the 'issues' prohibition covered. *Id.* at 208. If it cover[ed] promises like "I commit to follow *stare decisis*" or "I commit to follow an originalist theory of constitutional interpretation" then, the Sixth Circuit indicated the issues prohibition was likely unconstitutional. *Id.* If, on the other hand, the provision prohibited promises to affirm convictions for rape, then it may be constitutional. *Id.*

The Sixth Circuit noted that, at oral argument before that court, Carey agreed that the Commit Clause would be constitutional if it applied only to "cases" and "controversies" and did not apply to "issues." *Id*.  The Defendants, for their part, "suggested that a narrowing construction of the 'issues' clause could save it." *Id*. at 209. The Sixth Circuit found it was not clear, however, what the "Commonwealth's position on the term is." *Id*.  It further noted that this Court had "not yet explored these issues" and it remanded the case to give this Court the opportunity to do so. *Id*.

The Sixth Circuit also noted that, on remand, "[t]he state defendants may be able to obtain authority to remove the 'issues' language" or to "identify an acceptable narrowing construction of the 'issues' language along with a modification to the commentary; or they may suggest certification to the Kentucky Supreme Court." *Id*.  The Sixth Circuit found that "[a]ny of these options may spare the federal courts the task of resolving a difficult constitutional question, and at a minimum they will give the Commonwealth a first shot at addressing the question." *Id*.

After the Sixth Circuit remanded the case to this Court with these instructions, the Kentucky Supreme Court amended the Commit Clause to read as follows:

> A judge or a candidate for election to judicial office. . .shall not, in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office.

SCR 4.300, Canon 5B(1)(c).

In an Amended Complaint filed after the clause was revised, Carey asserts that the amended provision is also unconstitutionally vague and overbroad.  He and the Defendants have all moved for summary judgment in their favor on this issue.

3

**II.     Analysis**

The provision at issue now is very different from that at issue before the Sixth Circuit. Again, the clause that the Sixth Circuit found problematic and, thus, remanded to this Court to explore further provided that "[a] judge or candidate for election to judicial office. . .shall not intentionally or recklessly make a statement that a reasonable person would perceive as committing the judge or candidate to rule a certain way on a[n]. . . issue that is likely to come before the court."

The clause now is significantly more narrow, prohibiting judges and judicial candidates from, "in connection with cases, controversies, or issues that are likely to come before the court, mak[ing] pledges, promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office."

Because the clause reviewed by the Sixth Circuit no longer exists, that court's directive to this Court to explore the meaning of that clause is no longer applicable. Instead, the question before this Court is the only issue presented by the parties on summary judgment, namely, whether the current version of the Kentucky Commit Clause violates the First Amendment. The Sixth Circuit's opinion on the prior version of the Kentucky Commit Clause will guide this Court in resolving that issue.

The constitutionality of a clause with precisely the same language as Kentucky's current Commit Clause was addressed by the Seventh Circuit in *Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010), *cert. denied*, 131 S.Ct. 2872 (2011).  Like Carey in this action, the plaintiffs in *Bauer* also claimed that the Indiana clause was vague and overbroad.

In finding that the clause was not overbroad, the Seventh Circuit noted that "'[o]verbreadth' in the Supreme Court's jurisprudence has to do with *substantial* amounts of

4

protected speech." *Bauer*, 620 F.3d at 715. A law is not unconstitutionally overbroad simply because it "catches the occasional protected tidbit." *Id*. "A law is unconstitutionally overbroad when 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id*. (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

The court noted that the Indiana clause prohibited only "pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office" and found the applicable question not whether such speech could be prohibited but rather how such speech could be permitted. *Id*. at 714-15. The court further noted that such speech is precisely the kind of speech the Supreme Court thought might be prohibited in *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002). *Id*. The clause prohibits only promises or commitments that are inconsistent with a judge's duty to be impartial. It is not overbroad.

The prior version of the Kentucky Commit Clause – the version reviewed by the Sixth Circuit – prohibited "*all* commitments on 'issues'" and, thus, could be read to "prevent a candidate from declaring support for the rule of law or adherence to *stare decisis*." *Id*. at 716 (citing *Carey*, 614 F.3d at 201-03). The new version of Kentucky's clause – the version with the same language as the clause reviewed by the Seventh Circuit – prohibits only commitments that are "inconsistent with impartial adjudication," and, thus, permits a candidate to announce her views on legal subjects. *Id*.

As the Seventh Circuit found with regard to the Indiana clause, the Kentucky clause permits candidates:

> to tell the electorate not only their general stance ("tough on crime" or "tough on

5

>drug companies") but also their legal conclusions ("I would have joined Justice White's dissent in *Roe*" or "the death penalty should be treated as cruel and unusual punishment" or "I am a textualist and will not resort to legislative history" or "I will follow *stare decisis*" or "I am a progressive who will use a living-constitution approach").

*Id*. at 715. It is clear that announcing such views on legal subjects is not "inconsistent with the impartial performance of" judicial duties because judges who have made such announcements "sit every day without being thought to have abandoned impartiality." *Id*. at 715.

Carey also argues that the Kentucky Commit Clause is vague. A law is vague if it is not "sufficiently defined so that ordinary people, exercising ordinary common sense, can understand it and avoid conduct which is prohibited, without encouragement of arbitrary and discriminatory enforcement." *United States v. Salisbury*, 983 F.2d 1369, 1377-78 (6th Cir. 1993). Again, the Kentucky clause prohibits judicial candidates from "in connection with cases, controversies, or issues that are likely to come before the court, mak[ing] pledges, promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office."

As to the qualifier, "cases, controversies, or issues that are likely to come before the court," this includes almost any legal or political issue and, thus, is "not much of a limitation at all." *White*, 536 U.S. at 772. As to the phrase "pledges, promises or commitments," these terms are understandable to an ordinary person. As the court stated in *Dewe v. Alexander*, 490 F. Supp. 2d 968, 975 (W.D. Wis. 2007):

>Whether a statement is a pledge, promise or commitment is objectively discernable. It requires affirmative assurance of a particular action. It is a predetermination of the resolution of a case or issue. It is not a statement of belief or opinion. . . People are practiced in recognizing the difference between an opinion and a commitment (which explains why politicians typically stop short of the latter).

*Id.* at 975-76.

The remaining issue then is the meaning of the phrase, "inconsistent with the impartial performance of the adjudicative duties of judicial office." In *White,* the Supreme Court clarified the kind of judicial impartiality that a state has a compelling interest in preserving. A state has a compelling interest in preserving judicial impartiality to the extent that means a lack of bias for or against parties to court proceedings. 536 U.S. at 775-76. This is the meaning an ordinary person would attach to the term "impartial" as the term is used in the Commit Clause. This is the term's "root meaning" and the "traditional sense in which the term is used." *Id*. at 776 (quoting Webster's New International Dictionary 1247 (2nd ed. 1950)).

Furthermore, the Kentucky clause is accompanied by a commentary that provides more guidance as to what kinds of statements are prohibited:

> The making of a pledge, promise or commitment is not dependent upon, or limited to, the use of any specific words or phrases; instead, the totality of the statement must be examined to determine if a reasonable person would believe that the candidate for judicial office has specifically undertaken to reach a particular result. Pledges, promises, or commitments must be contrasted with statements or announcements of personal views on legal, political, or other issues, which are not prohibited. When making such statements, a judge should acknowledge the overarching judicial obligation to apply and uphold the law, without regard to his or her personal views.
>
> A judicial candidate may make campaign promises related to judicial organization, administration, and court management, such as a promise to dispose of a backlog of cases, start court sessions on time, or avoid favoritism in appointments and hiring. A candidate may also pledge to take action outside the courtroom, such as working toward an improved jury selection system, or advocating for more funds to improve the physical plant and amenities of the courthouse.
>
> Judicial candidates may receive questionnaires or requests for interviews from the media and from issue advocacy or other community organizations that seek to learn their views on disputed or controversial legal or political issues. Section 5B(1)(c) does not specifically address judicial responses to such inquires. Depending upon the wording and format of such questionnaires, candidates' responses might be viewed as pledges, promises or commitments to perform the adjudicative duties of the office other than in an impartial way. To avoid violating

> section 5B(1)(c), therefore, candidates who respond to media and other inquiries should also give assurances that they will keep an open mind and will carry out their adjudicative duties faithfully and impartially if elected. Candidates who do not respond may state their reasons for not responding, such as the danger that answering might be perceived by a reasonable person as undermining a successful candidate's independence or impartiality, or that it might lead to frequent disqualifications.

SCR 4.300, Canon 5(B)(1)(c), Commentary (Attached at Exhibit A).

The commentary makes clear that, in determining whether a "pledge, promise, or commitment" has been made, the question is whether "a reasonable person would believe that the candidate for judicial office has specifically undertaken to reach a particular result." The commentary also makes clear that "announcements of personal views on legal, political, or other issues . . . are not prohibited."  On the other hand, the clause prohibits a candidate from promising that he will not apply or uphold the law.  Given the language of the clause and the accompanying commentary, the Court cannot find that "ordinary people, exercising ordinary common sense" will be unable to understand it.

This does not mean that it is necessarily certain how the clause will be applied to every possible statement by a judicial candidate. "The touchstone of a facial vagueness challenge in the First Amendment context, however, is not whether *some* amount of legitimate speech will be chilled; it is whether a *substantial* amount of legitimate speech will be chilled." *California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2001).  "Even under the heightened standard for the First Amendment . . . the potential chilling effect on protected expression must be both 'real and substantial' to invalidate a statute as void for vagueness in a facial challenge." *Center for Individual Freedom v. Madigan*, No. 11-3693, 2012 WL 3930437, at * 8 (7th Cir. Sept. 10, 2012).

To the extent that it may be uncertain as to whether some statements fall within the

clause's prohibition, any judge or judicial candidate may obtain an advisory opinion from the state Judicial Ethics Committee. SCR 4.310(2). Carey argues that such a process represents an unconstitutional "prior restraint" because candidates must either obtain an advisory opinion to speak or be chilled from speaking at all. But, as the Court has already found, the clause will not chill a substantial amount of speech. It is only with regard to *some* statements that an advisory opinion will need to be sought.

In *Bauer*, the court explained that the Supreme Court had been "chary of holding laws unconstitutional 'on their face' precisely because they have recognized that vagueness will be reduced through a process of interpretation." 620 F.3d at 716-17 (citing *Civil Service Commission v. Letter Carriers*, 413 U.S. 548, 580 (1973); *Parker v.* Levy, 417 U.S. 733 (1974); *United States v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010), *cert. denied* 131 S.Ct. 1674 (2011)). The court found that "[a]dvisory opinions under the Code of Judicial Conduct are a more appropriate procedure than summary condemnation by a federal court before the [state commission] has an opportunity to tackle the ambiguities" in the clause at issue." *Id*. at 717.

Carey puts forth various reasons that this Court should not follow *Bauer*. He first argues in a footnote that the *Bauer* court incorrectly subjected the clause to less than strict-scrutiny review. (DE 137-1, Mem. at 7 n.1.) But Carey has misread *Bauer*. In reviewing the Indiana commit clause, the court followed the analysis in *White*, which applied strict scrutiny to the judicial canon under review. *See Bauer*, 620 F.3d at 714, 715; *White*, 536 U.S. at 774-75. In *Bauer*, the court made clear it would follow *White* in applying strict scrutiny to prohibitions like the commit clause which prohibit what judges can do in their own campaigns. *Bauer*, 620 F.3d at 713.

Carey next argues that, despite *Bauer*'s conclusion to the contrary, the Kentucky Commit

Clause does, in fact, prohibit candidates from pledging "to be a strict constructionist, or for that matter a legal realist" and from promising "a better shake for indigent litigants or harried employers." (DE 137-1, Mem. at 9.) For this argument, Carey quotes another Seventh Circuit decision, *Buckley v. Illinois Judicial Inquiry Bd.*, 997 F.2d 224, 228 (7th Cir. 1993). Carey also argues that the current Kentucky clause is really no different in scope than the clause found unconstitutional in *Family Trust Found. of Ky., Inc. v. Wolnitzek*, 345 F. Supp. 2d 672 (E. D. Ky. 2004).

But the clauses at issue in *Buckley* and *Family Trust* were much different than the clause at issue before this Court. The clause under review in *Buckley* prohibited a candidate from making *any* pledge or promise *except* a promise to faithfully and impartially perform his duties and also prohibited him from *announcing* his views on disputed legal or political issues. *Buckley*, 997 F.2d at 225. The clause in *Family Trust* also prohibited candidates from making "pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office" and from making statements that "commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court." *Family Trust*, 345 F. Supp. 2d at 676.

The current Kentucky clause prohibits a candidate from making promises that "are inconsistent with the impartial performance of the adjudicative duties of judicial office." As the Seventh Circuit stated in *Bauer*, the Kentucky clause prohibits precisely the kind of speech that *White* indicated could be curtailed. 620 F.3d at 715. The commentary to the Kentucky clause specifically states that "announcements of personal views on legal, political, or other issues . . . are not prohibited."

Carey argues that the clause impermissibly puts the speaker "at the mercy of the varied

understanding of his hearers." (DE 137-1, Mem. at 10). Here, Carey points to the commentary to the clause which states "the totality of the statement must be examined to determine if *a reasonable person* would believe that the candidate for judicial office has specifically undertaken to reach a particular result." It is the reasonable-person standard, however, that actually ensures that speakers are not at the mercy of "varied understandings." There is only one understanding of the speaker's comments that matters – that of the reasonable person. The Supreme Court has employed the objective-person standard in other contexts to differentiate protected and unprotected speech. *See Pope v. Illinois*, 481 U.S. 497, 500-01 (1987) ("The proper inquiry is not whether an ordinary member of any given community would find serious literary, artistic, political, or scientific value in allegedly obscene material, but whether a reasonable person would find such value in the material, taken as a whole.")

Carey argues the clause is overbroad because the Code defines a "judicial candidate" as "any person who simply states in public an intent to someday run for or to remain in elective judicial office." (DE 137-1, Mem. at 11.) The Code actually states that a "person becomes a candidate for judicial office as soon as he or she makes a public announcement of candidacy . . . ." SCR 4.300, Terminology. The clause seeks to ensure judicial impartiality and the appearance of the same. It is not overbroad in regulating the speech by all individuals who have publicly announced their candidacy for judge.

The clause prohibits precisely the kind of speech the Supreme Court thought might be prohibited in *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) and nothing more – pledges, promises, and commitments that are inconsistent with the impartial performance of judicial duties. *Bauer*, 620 F3d at 715. Thus, the Commit Clause is narrowly tailored to further Kentucky's compelling state interest in "regulating judicial campaign speech to ensure the reality

and appearance of an impartial judiciary." *Carey*, 614 F.3d at 194.

### III. Conclusion.

For all these reasons, the Court hereby ORDERS as follows:

1) The Defendants' Motion for Summary Judgment (DE 136) is GRANTED;

2) The Plaintiff's Motion for Summary Judgment (DE 137) is DENIED; and

3) This matter is DISMISSED and STRICKEN from the Court's active docket.

This 29th day of September, 2012,

Signed By:
*Karen K. Caldwell* KKC
United States District Judge